**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| VERTICAL YIELD, LLC *et al.*, | ) | |
| | ) | Case No. 3:19-cv-379 |
| *Plaintiffs & Counter-Defendants*, | ) | |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| COHERENTRX, INC., | ) | Magistrate Judge McCook |
| | ) | |
| *Defendant & Counter-Claimant.* | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment [Doc. 30] of Defendant / Counter-Claimant CoherentRx, Inc., and the Cross Motion for Summary Judgment [Doc. 43] of Plaintiffs / Counter-Defendants Phillip C. Ritchey, Romaine S. Scott, IV, and Vertical Yield, LLC. For reasons that follow, the Motion for Summary Judgment [Doc. 30] of CoherentRx, Inc., will be **GRANTED IN PART** and **DENIED IN PART** as set forth in this opinion. The Cross Motion for Summary Judgment [Doc. 43] of Phillip C. Ritchey, Romaine S. Scott, IV, and Vertical Yield, LLC, will be **DENIED**.

## I. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted. CoherentRx is a healthcare technology company that markets a software communication platform known as Patient Education Genius. [Doc. 30-3 at 2]. On May 24, 2019, CoherentRx issued an Independent Sales Representative Company Term Sheet for Vertical Yield, LLC. [Doc. 30-1]. The Term Sheet "confirm[s] the terms" of CoherentRx's "non-binding expression of interest to enter into a potential independent sales representative agreement with Vertical Yield." [*Id.* at 34]. The Term Sheet includes the following bullet point:

- Standard provisions regarding noncompetition and confidentiality. EVPs each represent that they are not currently bound by noncompetition agreements.

[Doc. 30-1 at 35]. The Term Sheet further provides:

> This letter is not contractual in nature and reflects only the intentions of the parties to proceed toward the negotiation of a definitive agreement. No party will have any obligation to any other party under this letter and the parties will have only those obligations, and will make only those representations, warranties and covenants, that are set forth in the definitive agreements (if any) which have been executed and delivered.

[*Id.*]. Above the signature lines for Vertical Yield, Scott, and Ritchey, the Term Sheet states: "The foregoing accurately describes the parties' discussions and the undersigned agrees to the terms set forth herein." [*Id.* at 37]. Plaintiffs Ritchey and Scott signed for Vertical Yield and signed individually. [*Id.*]. At the time the Term Sheet was executed, it appears that both Scott and Ritchey were Senior Vice Presidents at PatientPoint Network Solutions, LLC. [Doc. 30-1 at 50].

On or about July 8, 2019, Plaintiff Vertical Yield entered into an Independent Sales Company Agreement with Defendant CoherentRx. [Doc. 12-1]. Ritchey and Scott signed individually and as members of Vertical Yield. [*Id.*]. The parties agreed that the Sales Agreement was deemed to have been executed and entered into in the State of Michigan and that "its formation, operation, and performance shall be governed, construed, performed, and enforced in accordance with the substantive laws of that state without regard to its conflict of law principles." [*Id.* at 5]. As an exhibit to the Agreement, CoherentRx executed a Warrant for Shares of Stock, certifying that Vertical Yield was entitled to purchase shares of CoherentRx, subject to certain conditions. [Doc. 12-1 at 6-10].

Pursuant to the Sales Agreement, "[CoherentRx] appoints [Vertical Yield], and [Vertical Yield] accepts the appointment to be [CoherentRx's] nonexclusive sales representative for Products and Services sold and to be sold to customers of [CoherentRx] and to assist [CoherentRx]

2

. . . to maintain a positive relationship between [CoherentRx] and its customers as may be reasonably requested by [CoherentRx] during the Term." [Doc. 12-1 at 1]. The Sales Agreement provides that Vertical Yield is acting solely as an independent contractor. [*Id.*]. The Sales Agreement required Vertical Yield to, *inter alia*, "devote, to its fullest extent possible, all sales efforts to promote the Products and Services offered by [CoherentRx] to hospitals, healthcare systems, payors and other healthcare organizations." [*Id.*]. The Sales Agreement further required Vertical Yield to "call upon its known potential customers as well as the lists of potential customers provided by [CoherentRx] at any time." [*Id.*]. The effective date of the Sales Agreement was July 8, 2019, and required CoherentRx to pay Vertical Yield $40,000 per month for the services provided pursuant to the Agreement. [*Id.* at 1-2]

The Sales Agreement contains a merger/integration clause:

This Agreement sets forth the entire Agreement and understanding between the parties as to its subject matter and supersedes all prior agreements between the parties. Neither of the parties shall be bound by any conditions, definitions, representations, or warranties with respect to the subject matter other than as expressly provided in this Agreement.

[*Id.* at 4].

As to termination, the Sales Agreement gives either party the right to terminate the Agreement with or without cause on 30 days' written notice. [Doc. 12-1 at 3]. The Sales Agreement also allows CoherentRx to terminate Vertical Yield's employment for cause by written notice based on a good-faith determination by CoherentRx that certain events have occurred. [*Id.* at 2]. Events that constitute cause for termination include (a) Scott or Ritchey commit any act of fraud or gross negligence related to their employment and which causes harm to CoherentRx; (b) Scott or Ritchey are convicted of a crime that materially adversely affects CoherentRx; and (c) any material breach by Scott or Ritchey of their obligations under the Agreement. [*Id.*]. The Notice of

Termination must identify the specific conduct supporting it and be delivered within 90 days of CoherentRx's knowledge of the cause of termination. [*Id.* at 2-3]. Vertical Yield, Scott, and Ritchey would then have sixty days from receipt of the Notice of Termination to cure the event specified in the notice.

Also on July 8, 2019, Scott and Ritchey had a meeting with Chris Martini, President of Hospital Solutions and Chief Provider Officer of PatientPoint, in which they gave notice of the end of their employment at PatientPoint. [Doc. 30-2 at 19, 55]. They continued their employment with PatientPoint through July 31, 2019. [Doc. 30-1 at 3; Doc. 30-2 at 21].[1] According to CoherentRx CEO Tom Hartle, CoherentRx learned on September 6, 2019, that Scott and Ritchey had non-competition and other restrictive covenant obligations to PatientPoint. On September 11, 2019, Chris Martini sent a letter to Tom Hartle advising that both Scott and Ritchey entered into a Confidentiality, Non-Solicitation and Non-Competition Agreement when hired by PatientPoint and again at separation. [Doc. 30-2 at 56]. The letter states:

> I am concerned that certain provisions of the Agreement may be implicated currently, including the obligation to use PatientPoint's Confidential Information for the exclusive benefit of PatientPoint, the obligation to refrain from engaging in any business activity under serious consideration by PatientPoint within six months prior to their separation from PatientPoint and the obligation to refrain from soliciting PatientPoint's business partners.

[*Id.*].

On September 18, 2019, CoherentRx, through counsel, notified Vertical Yield that CoherentRx was terminating the Sales Agreement. The letter identifies Ritchey and Scott's non-compete agreements with PatientPoint. [Doc. 12-2 at 1]. The letter asserts that Scott and Ritchey represented to agents of CoherentRx that "they were not bound in any way by non-compete,

---

[1] Scott testified that he continued to work to secure a contract for PatientPoint through August 2019, but was not paid for this work beyond the severance he was already receiving. [Doc. 30-1 at 3-5].

confidentiality or non-solicitation agreements with PatientPoint." [*Id.*]. It states that these representations were made "on numerous occasions" to various individuals. [*Id.*]. The Notice states:

> The July 8, 2019 Independent Sales Company Agreement provides in paragraph 5(a) for termination for cause upon the commission of any act of fraud and in 5(c) for termination for cause for any material breach under the Agreement.
>
> After careful analysis of all of the evidence, you are hereby notified that CoherentRx Inc. is terminating the Independent Sales Company Agreement with Vertical Yield, LLC pursuant to paragraph 5(a) and 5(c). This termination for cause is immediate. Under these circumstances, any attempt to cure is deemed an impossibility and, based upon your conduct, any attempt to cure within the sixty (60) day notification period referenced in the July 28, 2019 Independent Sales Company Agreement has been forfeited and/or waived.

[Doc. 12-2]. In the letter, CoherentRx also makes demand for the $90,000 paid to Vertical Yield under the Agreement. [*Id.*].

Vertical Yield, Ritchey, and Scott filed their Complaint [Doc. 1] on September 27, 2019. In their Amended Complaint (hereinafter, "the Complaint"), they assert a claim for breach of contract based on CoherentRx's failure to make timely payments under the Sales Agreement and termination of the Agreement without required notice and opportunity to cure (Count I). [Doc. 12 at 14-15]. They also assert breach of contract based on the Stock Warrant (Count II) and unjust enrichment (Count III). Finally, Plaintiffs seek declaratory judgment that the termination for cause was invalid and in breach of the Agreement, that CoherentRx is not entitled to cancel the Stock Warrant, that CoherentRx is not entitled to a refund of the $90,000 paid under the Agreement, and that CoherentRx remains obligated to pay the balance of fees due under the Agreement (Count IV). [*Id.* at 19]. Plaintiffs seek not less than $50,000 in compensatory damages, $1,000,000 for the minimum estimated net profit that Vertical Yield expected to earn during the 3-year term of the Agreement, commissions that would have been earned under the Agreement, $2,000,000 for the

5

estimated fair market value of the Stock Warrant, and reasonable attorneys' fees, costs, and expenses. [*Id.* at 14-15].

In its Answer and Counterclaim [Doc. 13], CoherentRx raises several affirmative defenses, including that Plaintiffs committed the first material breach of the Agreement and are barred from recovery under the doctrine of unclean hands. CoherentRx asserts a claim for fraud and misrepresentation based on Ritchey and Scott's statements that they were not bound by any non-compete, confidentiality, or non-solicitation agreements (Count I), and a breach of contract claim based on its allegation that Plaintiffs could not fully perform the services required by the Agreement if they were subject to a non-compete agreement (Count II). [Doc. 13 at 9-15]. Defendant / Counter-Claimant seeks $90,000 in damages, plus costs, interest, and attorneys' fees. [*Id.*].

On May 7, 2021, CoherentRx filed a Motion for Summary Judgment [Doc. 30] as to all of Plaintiffs' claims. On August 24, 2021, Plaintiffs filed a Cross-Motion for Summary Judgment [Doc. 43], seeking judgment in their favor as to both of CoherentRx's counterclaims, as well as Plaintiffs' claims for breach of contract based on the Agreement, breach of contract based on the Stock Warrant, and request for declaratory judgment. [*Id.*]. They concede that Count III for unjust enrichment should be dismissed provided the Court finds that the parties have a legally binding contract that governs the claims and damages alleged in this action. [*Id.* at 1]. Response and reply briefs have been filed as to both motions, which are now ripe for review.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of

6

genuine issues of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor

7

of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

The parties appear to agree that substantive Michigan law governs the rights and liabilities of the parties. As noted above, the Agreement provides that it is deemed to have been executed and entered into in the State of Michigan and that "its formation, operation, and performance shall be governed, construed, performed, and enforced in accordance with the substantive laws of that state without regard to its conflict of law principles." [Doc. 12-1 at 5]. The Court will apply Michigan substantive law in interpreting and construing the Sales Agreement.

### A. CoherentRx's Motion for Summary Judgment

#### a. Positions of the Parties

CoherentRx argues that Plaintiffs intentionally misrepresented and/or concealed material information about their non-competition and restrictive covenant obligations to PatientPoint, justifying CoherentRx's termination of the Sales Agreement. [Doc. 31 at 10]. CoherentRx argues that fraud in the inducement renders the contract voidable at the option of the defrauded party, and argues the elements of fraud in the inducement are met here. Further, CoherentRx contends that parol evidence can be introduced to show the Sales Agreement was voidable due to fraud. [*Id.* at 11]. CoherentRx shows that even with the merger clause, fraud that invalidates the entire contract is sufficient to permit parol evidence to demonstrate fraud. [*Id.*]. According to Defendant, because the fraudulent representations of Ritchey and Scott "go to the heart of the CoherentRx Sales Agreement," they render it voidable by CoherentRx. [*Id.* at 13].

8

Next, Defendant argues that Plaintiffs committed the first material breach under the Sales Agreement, and thus cannot maintain an action against Defendant for any subsequent breach or failure to perform. [*Id.* at 13]. Specifically, CoherentRx argues that the Plaintiffs could not provide the services required by the Sales Agreement because of the undisclosed non-compete agreements with PatientPoint. Defendant also argues that Plaintiffs failed to "[d]evote to the fullest extent possible, all sales efforts to promote the products and services offered by [CoherentRx]" when they continued working for PatientPoint full time. [*Id.* at 15-16]. Finally, Defendant argues that Plaintiffs are barred from pursuing any equitable claims because they come before the Court with unclean hands. [*Id.* at 31].

Plaintiffs counter that any reliance on their alleged misrepresentations was per se unreasonable in light of the plain language of the Term Sheet and the merger clause of the Sales Agreement. [Doc. 40 at 6]. Plaintiffs concede that the Term Sheet inadvertently included a misrepresentation of fact. [*Id.* at 7]. They argue that under Michigan law, a merger clause in a contract precludes a party from introducing parol evidence to contradict or vary a written agreement. [*Id.* at 9]. They argue there is no admissible evidence to support Defendant's contention that the misrepresentations are sufficient to invalidate the entire Sales Agreement. [*Id.* at 8-9]. Plaintiffs contend that the merger clause specifically states that the parties are not bound by any representations as to the subject matter of the Agreement, rendering CoherentRx's reliance on the alleged misrepresentations unreasonable. [Doc. 40 at 12].

Next, Plaintiffs argue that even if misrepresentations were made by Scott and Ritchey, CoherentRx has failed to show that Plaintiffs materially breached the agreement, such that they committed the first material breach. According to Plaintiffs, whether the non-compete covenants would have prevented Plaintiffs from performing under the Sales Agreement requires resolving

the factual issue of whether PatientPoint and CoherentRx engaged in similar or competitive lines of business, precluding summary judgment. Plaintiffs further argue that CoherentRx cannot recover damages for breach of contract because it failed to follow the notice, cure, and termination protocols in the Sales Agreement. Finally, Plaintiffs show that if the Court disagrees with Plaintiffs' other arguments regarding parol evidence and the first material breach of the Sales Agreement, there is a disputed issue as to the alleged verbal misrepresentations made by Ritchey and Scott, preventing summary judgment.

In reply, CoherentRx contends that its reliance on the Plaintiffs' representations was reasonable because Michigan law recognizes a distinction between fraud relating to parol representations that can be nullified by a merger clause and fraud in the inducement that invalidates an entire contract. [Doc. 42 at 3]. CoherentRx argues that nothing in the Sales Agreement addresses Plaintiffs' prior employment, so those representations were not "with respect to the subject matter" of the Sales Agreement and not merged into the Agreement. [*Id.* at 5-6]. With the affidavit of Tom Hartle, CoherentRx argues that Plaintiffs could not perform their duties under the Sales Agreement without violating their non-compete agreements with PatientPoint. [*Id.* at 7]. Thus, whether or not Plaintiffs verbally misrepresented the existence of non-compete agreements is immaterial. CoherentRx contends it has demonstrated that the first material breach of contract was by Plaintiffs. [*Id.* at 9-10].

Next, CoherentRx contends the notice and cure provisions of the Sales Agreement are irrelevant to the resolution of its motion because the motion seeks dismissal of Plaintiffs' claims, not an award of damages to CoherentRx. [*Id.* at 10]. Finally, Defendant notes that Plaintiffs did not respond to its argument regarding unclean hands and CoherentRx's motion for judgment as to Plaintiffs' claim for equitable relief is therefore uncontested. [*Id.* at 11].

### b. Fraudulent Misrepresentation Defense

"The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29, n. 28 (Mich. 1994). "If a written document, mutually assented to, declares in express terms that it contains the entire agreement of the parties . . . this declaration is conclusive as long as it has itself not been set aside by a court on grounds of fraud or mistake . . . It is just like a general release of all antecedent claims." 3 Corbin, Contracts, § 578, pp. 402-411; *UAW-GM Hum, Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 416 (Mich. Ct. App. 1998) ("When the parties choose to include an integration clause, they clearly indicate that the written agreement is integrated."). A merger or integration clause can thus preclude a fraud claim or defense in two ways. *See Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-cv-679, 2009 WL 3270265, *3 (W.D. Mich. Oct. 5, 2009). First, a merger clause establishes that a written contract is an integrated agreement, so it brings into play the parol evidence rule. *Id.* Second, "since a merger clause nullifies a promise not included in the written agreement, it also makes reliance on that promise unreasonable." *Id.*

As to the first effect, "[p]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *UAW-GM*, 579 N.W.2d at 414 (quoting *Schmude Oil Co. v. Omar Operating Co.*, 458 N.W.2d 659 (1990)). Michigan recognizes several exceptions to the parol evidence rule, allowing extrinsic evidence to prove, *inter alia*, that the contract has no efficacy or effect because of fraud, illegality, or mistake. *Id.* ("Parol evidence generally may be considered to determine whether fraud occurred under the second exception to the parol evidence rule discussed in *NAG*."). "Thus, when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself,

11

i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause." *UAW-GM*, 579 N.W. 2d at 419. Misrepresentations that relate to "discrete" terms of a contract are not sufficient to invalidate the whole contract, while misrepresentations of fact made to induce the other party to enter a contract may be considered fraud that invalidates the entire contract. *Whitesell Corp.*, 2009 WL 3270265 at *3.

Second, reasonable reliance is an element of fraud under Michigan law and a merger clause can render reliance unreasonable depending on its language and scope. Michigan law recognizes fraud in the procurement of the contract as a cause of action, but also as "grounds to retroactively avoid contractual obligations through traditional legal and equitable remedies such as cancellation, rescission, or reformation." *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 557-58 (Mich. 2012). Michigan's contract law further recognizes several "interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." *Id.* at 555. At issue here is "actionable fraud, also known as fraudulent misrepresentation." *Id.* To state a claim for actionable fraud, a plaintiff must show:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Id.* (quoting *Candler v. Heigho*, 175 N.W. 141, 143 (Mich. 1919) (overruled on other grounds)).

As several courts have recognized, "[t]he state of Michigan law is somewhat unsettled regarding the impact of a merger clause on fraud claims premised on parol agreements or representations." *Galeana Telecomm. Invs. v. Amerifone Corp.*, 202 F. Supp. 3d 711, 725 (E.D. Mich. 2016). Some Michigan courts have drawn a distinction between (i) representations of fact

made to induce a party to enter into a contract, and (ii) collateral agreements or understandings between two parties that are not expressed in a written contract. *Star Ins. v. United Com. Ins. Agency, Inc.*, 392 F. Supp.2d 927, 928-29 (E.D. Mich. 2006). Under this view, only collateral agreements are "eviscerated" by a merger clause, even if they were the product of misrepresentation. *Id.* at 929.

Moreover, fraud can only invalidate a contract "when a party's assent to said contract is induced through *justified* reliance upon a fraudulent misrepresentation." *Id.* Whether reliance is reasonable circles back to the merger clause, because "a merger clause can render reliance unjustified as to agreements, promises or understandings related to performances that are not included in the written agreement." *Id.* In other words, a party cannot reasonably rely on oral promises or collateral agreements regarding "additional or contrary contract terms" when they sign a contract that includes a merger clause. *Id.* at 929-30. At the same time, the party "could still justifiably rely upon representations made by another party regarding things outside the scope of the contractual terms, such as the other party's solvency, indebtedness, experience, clientele, client retention rate, business structure, etc." *Id.* at 930.

Based on the authority cited by the parties and the Court's review of Michigan law, the Court finds that the merger clause does not render CoherentRx's reliance on Plaintiffs' representations unreasonable. The parties do not dispute that the Sales Agreement contains a merger/integration clause:

> This Agreement sets forth the entire Agreement and understanding between the parties as to its subject matter and supersedes all prior agreements between the parties. Neither of the parties shall be bound by any conditions, definitions, representations, or warranties with respect to the subject matter other than as expressly provided in this Agreement.

13

[Doc. 12-1 at 4]. Because the Sales Agreement contains a valid merger clause, "the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause." *UAW-GM*, 579 N.W. 2d at 419.

CoherentRx contends that Scott and Ritchey falsely represented that they were not bound by any non-competition or solicitation agreements and that CoherentRx relied on these representations in entering the Sales Agreement. These representations do not relate to "additional or contrary contract terms." *See Star Insurance*, 392 F. Supp. 2d at 929-30. They do not reflect a collateral agreement or promise that would be merged into the Sales Agreement, because the Sales Agreement does not discuss whether Plaintiffs were bound by non-compete agreements. *See id.* at 292.

Rather, the representations at issue relate to matters outside of the scope of the Sales Agreement. Indeed, the merger clause provides that "[n]either party shall be bound by any . . . representations with respect to the subject matter other than as expressly provided in this Agreement." [Doc. 12-1 at 4] (emphasis added). In the preceding sentence, the "subject matter" refers to the subject matter of the Agreement. [*Id.*]. Thus, the plain language of the merger clause is restricted to representations with respect to the subject matter of the Sales Agreement. Based on Michigan law and the plain language of the merger clause, the Court finds that the merger clause in the Sales Agreement does not render CoherentRx's reliance on the alleged misrepresentations unreasonable as a matter of law. If proven, the fraud alleged is thus the type that could invalidate the entire contract, and consequently, "[p]arol evidence . . . may be considered to determine whether fraud occurred." *UAW-GM*, 579 N.W. 2d at 418.

Plaintiffs argue that the non-compete agreements with PatientPoint must be within the "subject matter" of the Sales Agreement because CoherentRx terminated the agreement for cause based on "any act of fraud . . . related to [Plaintiffs'] employment." [Doc. 46 at 4]. Plaintiffs reason that if the "act of fraud" was "related" to Plaintiffs' employment, it must also be within the "subject matter" of the Agreement. [*Id.*]. This reasoning is unpersuasive. It asks the Court to look to beyond the four corners of the Sales Agreement and consider CoherentRx's termination letter in order to construe the merger clause. Moreover, the phrase "relating to" is notoriously broad, while the "subject matter" of a document is necessarily defined by its contents.

Thus, the Court may consider the parol evidence of fraud offered by CoherentRx. The Term Sheet provides: "EVPs each represent that they are not currently bound by noncompetition agreements." [Doc. 30-1 at 35]. The Term Sheet is signed by Ritchey and Scott, confirming that "[t]he foregoing accurately describes the parties discussions and the undersigned agrees to the terms set forth herein." [*Id.*]. The Term Sheet also provides:

> This letter is not contractual in nature and reflects only the intentions of the parties to proceed toward the negotiation of a definitive agreement. No party will have any obligation to any other party under this letter and the parties will have only those obligations, and **will make only those representations, warranties and covenants, that are set forth in the definitive agreements** (if any) which have been executed and delivered.

[*Id.*] (emphasis added).

Plaintiffs argue that this clause is a "no-reliance clause" that operates to make reliance on statements in the Term Sheet unreasonable. [Doc. 44 at 10]. As Plaintiffs acknowledge, there is very little Michigan law on the validity of no-reliance clauses. Indeed, Plaintiffs have cited no Michigan state court authority regarding the construction or enforcement of such clauses. Rather, Plaintiffs contend that courts are more willing to enforce a no-reliance clause where (1) it is a separate clause rather than embedded in another provision, (2) it expressly mentions and disclaims

15

"reliance," and (3) the contracting parties are sophisticated. [Doc. 44 at 10-11]; *see also Whitesell Corp.*, 2009 WL 3270265 at * 4 (listing three factors and citing persuasive authority).

The Term Sheet does not mention "reliance" or clearly disclaim reliance on representations within the document. The language is markedly different than the "no-reliance" clauses in the cases relied on by Plaintiffs. The clause is also somewhat unclear. The language is prospective, relating to representations the parties "will make," yet it is also restricted to definitive agreements "which <u>have</u> been executed and delivered." [Doc. 30-1 at 35]. (emphasis added). Based on this language, the Court cannot find that CoherentRx's reliance on representations in the Term Sheet was unreasonable as a matter of law.

There is also some dispute as to whether Scott and/or Ritchey verbally advised that they were not obligated by any non-competition agreement with their prior employer. CoherentRx says they did, while Ritchey testified that "[t]he only thing I ever said on the topic was that we did not sign anything at PatientPoint that would prevent us from working at CoherentRx." [Doc. 30-2 at 38].

Neither party has presented law or argument as to how Michigan courts would construe ambiguous and arguably contradictory provisions in a non-binding term sheet. Though the Term Sheet is not a contract, the Court is guided by Michigan contract law. "If the meaning of an agreement is ambiguous or unclear, the trier of fact is to determine the intent of the parties." *UAW-GM*, 579 N.W.2d at 414. This approach also comports with the standard of review on summary judgment, allowing the trier of fact to weigh the evidence, resolve material fact disputes, and make credibility determinations.

The Court finds that the merger clause in the Sales Agreement does not render CoherentRx's reliance on Plaintiffs' representations unreasonable as a matter of law. However,

viewed in the light most favorable to Plaintiffs as the non-moving party, the ambiguity in the Term Sheet and fact dispute as to Scott and Ritchey's verbal representations create a genuine issue of material fact as to reasonable reliance. Since reasonable reliance is an element of fraud, CoherentRx has failed to demonstrate that the Sales Agreement was voidable due to fraud and is not entitled to summary judgment on this basis.

### c. First Material Breach

CoherentRx next argues that Plaintiffs cannot recover for breach of contract because they committed the first material breach of the Sales Agreement. [Doc. 31 at 13]. Under Michigan law, "one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition v. Pontiac*, 739 N.W.2d 696, 701 (Mich. Ct. App. 2007) (quoting *Michaels v. Amway Corp.*, 522 N.W.2d 703, 706 (Mich. Ct. App. 1994)). "However, the rule only applies if the initial breach was substantial." *Id.* In determining whether a breach is substantial, the Court considers whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive. *Able Demolition*, 739 N.W.2d at 701. In *Able*, the contract expressly required Able to obtain a preapproval letter prior to carrying out any demolition called for by the contract, which it failed to do. The court found that the term "goes to the heart of the agreement," which not only contemplated performance of demolition services, but created a legal protocol so that any demolition would minimize the risk of legal liability and the violation of property rights. *Id.* at *701-702. The court found Able's breach was substantial and that it could not maintain an action for damages as a matter of law. *Id.* at *702.

Viewed in the light most favorable to Plaintiffs, CoherentRx has not shown that Plaintiffs materially breached the Sales Agreement. Pursuant to the Sales Agreement, the duties of Vertical Yield included:

> [Vertical Yield] shall devote, to its' [sic] fullest extent possible, all sales efforts to promote the Products and Services offered by [CoherentRx] to hospitals, healthcare systems, payors and other healthcare provider organizations.
> . . .
> [Vertical Yield] shall call upon its known potential customers as well as the lists of potential customers provided by the [CoherentRx] at any time. [Vertical Yield], at all times requested by [CoherentRx], shall provide [CoherentRx] with detailed sales reports.

[Doc. 12-1 at 1]. CoherentRx argues that Plaintiffs could not perform these duties because of the non-compete agreements that Ritchey and Scott had with PatientPoint. [*Id.* at 15]. In support of this assertion, Defendant offers the Affidavit of its CEO, Tom Hartle. [Doc. 30-3]. CoherentRx also shows that after the Sales Agreement became effective, Scott and Ritchey continued working full time for PatientPoint for several weeks. [Doc. 31 at 15; Doc. 45 at 4].

Plaintiffs respond that even if they misrepresented their non-compete obligations, CoherentRx cannot show that their conduct breached the Sales Agreement. [Doc. 40 at 12]. Plaintiffs argue that portions of the Hartle Affidavit should not be considered because they are legal opinions or unsupported assertions. [Doc. 44 at 18-19]. Finally, Plaintiffs say there is a fact issue as to whether the non-compete agreements with PatientPoint actually conflicted with their duties under the Sales Agreement. [*Id.* at 19]. The parties appear to agree that CoherentRx and PatientPoint were partners. [Doc. 44 at 19; Doc. 45 at 2]. According to Plaintiffs, the companies were not competitive.[2]

Initially, the Hartle Affidavit is of limited utility on this issue. Hartle opined that Plaintiffs "would not have been able to perform the obligations under the CoherentRx Sales Agreement without violating the non-competition and other restrictive covenant obligations with PatientPoint." [Doc. 30-3 at ¶ 5]. Hartle further opines that "[t]he obligations of Scott and Ritchey

---

[2] Plaintiffs reference deposition testimony from both Scott and Ritchey to this effect, but have not put the relevant portions of the transcript into the record. [*See* Doc. 44 at 19] (referencing Exhibits not attached to memorandum in support of summary judgment).

18

under the CoherentRx Sales Agreement conflict with their obligations to PatientPoint." [*Id.*]. CoherentRx contends that it would be clear, even to a lay person, that Plaintiffs could not perform the duties of the Sales Agreement without violating their non-compete agreement with PatientPoint. [Doc. 42 at 7]. But Hartle does not aver that he has read Plaintiffs' agreements with PatientPoint. So, his statements regarding the obligations of Scott and Ritchey to PatientPoint do not appear to be based on personal knowledge. *See* Fed. R. Civ. Proc. 56(c)(4); Fed. R. Evid. 701. Moreover, even an expert witness is not permitted to make legal conclusions. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016). Accordingly, the Court cannot consider Hartle's legal opinions about what conduct would violate Plaintiffs' agreements with PatientPoint or whether their duties under Sales Agreement conflict with their obligations to PatientPoint.

Regardless of the Hartle Affidavit, CoherentRx has not shown that Vertical Yield breached specified provisions of the Sales Agreement. The Sales Agreement does not discuss non-competition agreements with prior employers. Rather, CoherentRx argues that "Plaintiffs could not perform their duties under the Sales Agreement . . . without violating the non-compete agreement with PatientPoint." [Doc. 45 at 19]. CoherentRx shows that the PatientPoint non-compete prohibited Scott and Ritchey from engaging "in the same or similar business as PatientPoint" or contributing knowledge "to an entity engaged in the same, or substantially similar, business as PatientPoint." [Doc. 42 at 9]. But whether Plaintiffs violated their non-compete agreements with PatientPoint is not the issue; those agreements are not the basis of the parties' claims. The relevant inquiry is whether Plaintiffs breached the Sales Agreement. Assuming the agreements create conflicting obligations, CoherentRx has not presented any legal theory under which the existence of a prior conflicting obligation creates a breach of a later contract.[3] To prove

---

[3] Plaintiffs also argue that whether their performance under the CoherentRx Sales Agreement conflicted with their obligations to PatientPoint turns on whether the parties were competitors and the nature of the work performed.

its defense, CoherentRx must show that Plaintiffs actually breached a provision of the Sales Agreement, not that a breach was possible or even likely, and further show that the breach was substantial.

Similarly, CoherentRx argues that Vertical Yield was required to call upon "its known potential customers," and that doing so would violate the PatientPoint agreements. Plaintiffs' agreements with PatientPoint prevented them from contacting PatientPoint's current, former, or prospective customers "for purposes of offering or accepting goods or services similar to or competitive with those offered by [PatientPoint]." [Doc. 45 at 16; Doc. 30-1 at 66]. Yet Scott testified that the "known potential customers" in the Sales Agreement would have included health systems they "had relationships with via [their] past experiences such as PatientPoint." [Doc. 31 at 15; Doc. 30-1 at 13]. Assuming again that the agreements conflict, this suggests that Plaintiffs might have violated the PatientPoint Agreements if they performed under the Sales Agreement. It does not demonstrate that Plaintiffs breached the Sales Agreement. CoherentRx does not allege, for example, that Vertical Yield in fact failed to call upon "known potential customers."

Next, CoherentRx argues Vertical Yield did not or could not "devote, to its fullest extent possible, all sales efforts to promote the Products and Services" offered by CoherentRx. [Doc. 31 at 15]. CoherentRx stops short of contending that the Sales Agreement created an exclusive relationship that precluded other employment by Plaintiffs or set minimum time commitments. It notes, however, that Plaintiffs briefly continued to work for PatientPoint during the term of the Sales Agreement and received compensation and severance from PatientPoint. [*Id.*]. CoherentRx also shows that Vertical Yield agreed to act as a professional sales team for a third party. [Doc. 45

---

Because CoherentRx has failed to demonstrate that the existence of non-compete agreements with PatientPoint created a breach of the Sales Agreement, the Court does not find it necessary to parse the provisions of the respective agreements to determine the extent of any conflict.

at 5]. Plaintiffs counter that the Sales Agreement made Vertical Yield a "non-exclusive" sales agent and independent contractor of CoherentRx. [Doc. 44 at 5]. While the Sales Agreement includes a non-compete provision,[4] CoherentRx never argues or alleges that Plaintiffs violated that provision.

Viewed in the light most favorable to Plaintiffs, there is a genuine issue of material fact as to whether the Sales Agreement prohibited Plaintiffs from maintaining other business/employment relationships during the term of the Agreement. True, the Sales Agreement required Vertical Yield to "devote, to its fullest extent possible, all sales efforts to promote the Products and Services" offered by CoherentRx. But neither party has explained exactly what this provision means and what it required of Vertical Yield or the individual members of Vertical Yield. CoherentRx does not claim that the Sales Agreement precluded all other business arrangements or employment. And in order for the first material breach rule to apply, CoherentRx must show that any breach was "substantial." *See Able Demolition*, 739 N.W.2d at 701. Because it is not clear precisely what this provision of the Agreement required of Vertical Yield, it is not clear whether CoherentRx as the nonbreaching party "obtained the benefit which he or she reasonably expected to receive." *Id.* Accordingly, CoherentRx's motion for summary judgment on the basis that Plaintiffs committed the first material breach of the Sales Agreement is **DENIED**.

### d. Equitable Claims

CoherentRx moves for summary judgment on Plaintiffs' equitable claims on the grounds that they come before the Court with unclean hands. Plaintiffs have not responded in opposition to that argument. In their Cross-Motion for Summary Judgment, Plaintiffs agree that Count III for

---

[4] "[Vertical Yield] will not . . . directly or indirectly (whether as an independent contractor, partner (limited or general) or otherwise) own, manage, control, participate in, consult with or render services for any competing health education software business at any location within the United States." [Doc. 12-1 at 3].

unjust enrichment / *quantum meruit* should be dismissed provided the Court finds that the parties have a legally binding contract that governs the claims and damages alleged in this action. [Doc. 43 at 1]. As the Sixth Circuit has held, "[t]his Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 Fed. App'x 368, 372 (6th Cir. 2013); see also *Pickett v. Johnson*, No. 1:13-cv-321, 2015 WL 5734921 *7 (E.D. Tenn. Sept. 30, 2015) (claim deemed abandoned where plaintiff failed to address it in his response in opposition to summary judgment motion). Having failed to respond in opposition to CoherentRx's motion for judgment on Count III for unjust enrichment / *quantum meruit*, Plaintiffs have abandoned it. CoherentRx's motion for summary judgment is therefore **GRANTED** as to this claim.

CoherentRx's motion also seeks dismissal of Plaintiffs' claim for declaratory judgment. [Doc. 31 at 16]. Defendant contends that the "gravamen" of the claim is for equitable relief. However, courts have recognized a request for declaratory judgment as "a statutory creation" that is "neither legal nor equitable." *American Safety Equip. Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968); *Sanders v. Louisville & N.R. Co.*, 144 F.2d 485, 486 (6th Cir. 1944) ("While actions for declaratory judgment are sui generius and the procedural remedy is neither legal nor equitable, the issues tendered by the pleadings may be legal or equitable."). CoherentRx has not demonstrated that the nature of the declaratory relief is equitable such that this defense would bar the claim. Moreover, Plaintiffs continue to seek declaratory judgment. Under these circumstances, the Plaintiffs' failure to respond to this defense will not be deemed an abandonment of their request for declaratory judgment. Accordingly, the motion for summary judgment is **DENIED** in this regard.

22

**B. Plaintiffs' Cross-Motion for Summary Judgment**

Plaintiffs / Counter-Defendants Vertical Yield, Scott, and Ritchey move for summary judgment as to CoherentRx's counterclaims for fraud and misrepresentation (Count I) and breach of contract (Count II). [Doc. 43]. Plaintiffs further seek summary judgment as to three of the four claims asserted in the Amended Complaint: Count I for breach of the Sales Agreement, Count II for breach of the Stock Warrant, and Count IV, seeking declaratory judgment as to the parties' rights and obligations under the Sales Agreement.

Plaintiffs argue they are entitled to summary judgment because (1) CoherentRx's reliance on their alleged misrepresentations was unreasonable in light of the "no reliance" and merger/integration clauses in the Term Sheet and Sales Agreement; (2) the inadvertent misrepresentation in the Term Sheet is not a sufficient basis for voiding the Sales Agreement; (3) the merger clause in the Sales Agreement precludes reliance on extrinsic evidence of representations by Plaintiffs; (4) CoherentRx has failed to demonstrate a material breach of the Sales Agreement by Plaintiffs; and (5) CoherentRx is precluded from recovering for breach of contract because it failed to follow the notice and cure provisions of the Sales Agreement.

These arguments relate almost exclusively to CoherentRx's counterclaims and defenses, and have largely been addressed in connection with CoherentRx's Motion for Summary Judgment. As explained in Section III.A.b., above, there is a genuine dispute of material fact as to whether CoherentRx reasonably relied on Plaintiffs' alleged misrepresentations. Viewing the facts in the light most favorable to CoherentRx as the non-moving party does not alter this outcome. Thus, Plaintiffs are not entitled to summary judgment based on their arguments regarding Defendant's reliance, the merger clause, or the Term Sheet.

Second, Plaintiffs argue that CoherentRx has not shown how Plaintiffs materially breached the Sales Agreement. Again, the Court has already addressed this argument because it relates to CoherentRx's "first material breach" defense. There is a genuine issue of material fact as to whether Vertical Yield breached the Sales Agreement by failing to devote "to its fullest extent possible, all sales efforts to promote the Products and Services" offered by CoherentRx. CoherentRx shows that Plaintiffs continued to work for PatientPoint after the effective date of the Sales Agreement and entered into another agreement with a third party. Viewing the facts in the light most favorable to Defendant as the non-moving party, Defendant has produced at least some evidence that supports its claim for breach of the Sales Agreement, and accordingly, Plaintiffs are not entitled to judgment on this claim.

Finally, Plaintiffs contend that CoherentRx is precluded from recovering for breach of contract because it failed to follow the Notice and Cure provisions in the Sales Agreement. [Doc. 44 at 19]. Plaintiffs show that CoherentRx terminated the Sales Agreement for "cause." [Doc. 46 at 7]. The Sales Agreement defines "cause" to include "any act of fraud" by Plaintiffs "related to their employment." [Doc. 12-1 at 2]. Since the "for cause" termination provision clearly covers acts of fraud, Plaintiffs wonder that their alleged misrepresentations could be "so egregious that the notice and cure protocol was rendered moot." [Doc. 46 at 7]. This is not exactly what CoherentRx has argued. Rather, CoherentRx cites Michigan law holding that fraudulent inducement/misrepresentation makes a contract voidable at the option of the harmed party. And recall that fraudulent inducement is only one of the types of fraud recognized by Michigan law, not all of which operate to void a contract. Because there is a genuine issue of material fact as to fraudulent misrepresentation, the Court cannot determine whether CoherentRx was entitled to terminate the contract without complying with its notice and cure provisions.

24

Importantly, each of Plaintiffs' arguments goes to CoherentRx's claims and defenses, not to their own claims against CoherentRx. Plaintiffs argue that the Term Sheet and Sales Agreement "render CoherentRx's defenses and counterclaims meritless," [Doc. 44 at 16], that "CoherentRx is precluded from recovering damages for breach of contract," [*Id.* at 19], that CoherentRx "has failed to carry its burden" of demonstrating that Plaintiffs breached the Sales Agreement [*Id.* at 17], and that there is no evidence that Plaintiffs' conduct "amounted to a material breach of the Sales Agreement" or "that CoherentRx was damaged in any manner" [*Id.* at 18]. The only contention that is arguably relevant to the elements of Plaintiffs' claims is that CoherentRx failed to follow the notice and cure provisions of the Sales Agreement. Yet even here, Plaintiffs say that CoherentRx's failure precludes it from maintaining a breach of contract counterclaim. [*Id.* at 20].

As the party seeking summary judgment, Plaintiffs have the initial burden of demonstrating that no genuine issue of material fact exists as to their claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the plaintiff moves for summary judgment on its own claim, "the moving party's initial burden is not merely to identify holes in the non-moving party's case." *United States v. Feldman*, 439 F. Supp.3d 946, 951 (E.D. Mich. 2020). Rather, "the moving party 'must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of finding in favor of the non-movant on the claim.'" *Id.* (quoting *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015)); *see also Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) ("In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.").

Plaintiffs have not carried this burden. While Plaintiffs reference the claims asserted in the Complaint, they do not make affirmative argument demonstrating that they are entitled to summary judgment on any of them. As to Count I for breach of the Sales Agreement, the Amended Complaint alleges that CoherentRx materially breached the Sales Agreement in several ways: (i) failing to make timely payments to Vertical Yield; (ii) attempting to terminate the Sales Agreement without giving notice and/or opportunity to cure; and (iii) depriving Plaintiffs of the benefit of the bargain under the Sales Agreement. [Doc. 12 at 14, ¶¶ 54-56]. As Plaintiffs acknowledge (albeit with respect to CoherentRx's counterclaim), to state a breach of contract claim under Michigan law, the plaintiff must first establish the existence of a valid contract. *Galeana Telecomms. Invs., Inc. v. Amerifone Corp.*, 202 F. Supp. 3d 711, 721 (E.D. Mich. 2016). "Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contact, that the defendant breached the terms of the contract, and that the breach caused plaintiff's injury." *Id.* (quoting *Eastland Partners Ltd. Partners v. Village Green Mgmt. Co.*, 342 F.3d 620, 628 (6th Cir. 2003)). The closest Plaintiffs come to addressing the elements of their breach of contract claim is arguing that CoherentRx cannot recover on their counterclaims because it failed to follow the notice and cure provisions of the Sales Agreement. There is a genuine issue of material fact as to whether the contract was voidable due to fraudulent misrepresentation, precluding summary judgment on Plaintiffs' claim for breach of the Sales Agreement. As best the Court can discern, Plaintiffs raise no other arguments that would establish their entitlement to judgment on this claim.

As to Count II, the motion only mentions the Stock Warrant in two places. First, Plaintiffs explain that the Sales Agreement "included a Warrant for Shares of Stock granting the Plaintiffs the right to acquire shares of stock in CoherentRx (the "Stock Warrant")." [Doc. 44 at 2]. The

Stock Warrant included a vesting schedule and a stipulation that if Scott and Ritchey were terminated without cause, they would be entitled to exercise the Stock Warrant to the extent it was vested in the year of termination. [*Id.*]. Second, Plaintiffs note that the Complaint seeks damages for CoherentRx's repudiation of the Stock Warrant. [*Id.* at 5]. The Court cannot locate any other discussion of the Stock Warrant in Plaintiffs' motion for summary judgment.

Similarly, Plaintiffs do not address their request for declaratory judgment. In the Amended Complaint, Plaintiffs seek the following determinations:

(a) That CoherentRx's purported termination of the Plaintiffs "for cause" was invalid and amounted to a material breach of the Sales Agreement;

(b) That the purported termination of the Sales Agreement, if any, could only be characterized as termination "without cause";

(c) That CoherentRx is not entitled to a refund of the $90,000 that it has paid to Vertical Yield;

(d) That CoherentRx remains obligated to pay the balance of fees that are due and owing to Vertical Yield, which amount is at least $50,000 as of the date of [the] Complaint; and

(e) That CoherentRx is not entitled to cancel the Stock Warrant and that the Plaintiffs' rights under the Stock Warrant are vested for the first year as provided under the terms of the Sales Agreement and the Stock Warrant itself.

Plaintiffs further ask the Court to declare that the non-compete provision in the Sales Agreement is unenforceable. Plaintiffs do not connect any of their arguments to their requests for declaratory judgment. Genuine issues of material fact preclude judgment as to (a), (b), (c), and (d). The motion does not address the parties' rights under the Stock Warrant or the enforceability of the non-compete provision in the Sales Agreement. In the absence of any argument or legal authority to support these requests for declaratory judgment, summary judgment will not be entered.

Plaintiffs have not carried their burden of demonstrating that no genuine issue of material fact exists as to their claims. The Motion fails to set forth any argument explicitly directed towards Plaintiffs' claims against CoherentRx, focusing entirely on CoherentRx's claims and defenses. And "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (*quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). Moreover, the Court "need not scour the record or make a case for a party who has failed to do so on his own behalf." *Shorts v. Bartholomew*, 255 F. App'x 46, 50 (6th Cir. 2007). Accordingly, Plaintiffs' Cross Motion for Summary Judgment [Doc. 43] will be **DENIED** in its entirety.

## IV.    CONCLUSION

Accordingly, the Motion for Summary Judgment [Doc. 30] of CoherentRx, Inc., is **GRANTED IN PART** as to Plaintiffs' unjust enrichment claim, which is **DISMISSED**, and **DENIED IN PART** as to the remainder of Plaintiffs' claims. The Cross Motion for Summary Judgment [Doc. 43] of Phillip C. Ritchey, Romaine S. Scott, IV, and Vertical Yield, LLC, is **DENIED**.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
CHARLES E. ATCHLEY, JR.
UNITED STATES DISTRICT JUDGE